IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATSY MIDDLEBROOK, | § | CV NO. 5:15-CV-237-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SLM FINANCIAL CORPORATION | § | |
| d/b/a SALLIE MAE, NAVIENT | § | |
| SOLUTIONS, INC. and NATIONAL | § | |
| ENTERPRISE SYSTEMS, INC., | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) DENYING PLAINTIFF'S MOTION TO REMAND; (2) DENYING WITHOUT PREJUDICE AS MOOT DEFENDANTS' MOTION TO DISMISS

Before the Court are a Motion for Remand filed by Plaintiff Patsy Middlebrook ("Plaintiff" or "Middlebrook") ("Mot.," Dkt. # 14) and a Motion to Dismiss filed by Defendants SLM Financial Corporation d/b/a Sallie Mae ("Sallie Mae"), Navient Solutions, Inc., and National Enterprise Systems, Inc. (collectively, "Defendants") (Dkt. # 5). On May 20, 2015, the Court held a hearing on the motions. Robert D. Dabaghian, Esq., represented Plaintiff; Adam C. Ragan, Alan F. Arnold, and C. Charles Townsend, Esqs., represented Defendants.

At the outset, the Court **DENIES WITHOUT PREJUDICE AS MOOT** the Defendants' Motion to Dismiss (Dkt. # 5), as Plaintiff has since filed an Amended Complaint (see Dkt. # 16).

1

After careful consideration of the memoranda in support of and in opposition to the Motion to Remand, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES** Plaintiff's Motion to Remand (Dkt. # 14).

## BACKGROUND

On December 14, 2005, Plaintiff agreed to cosign a student loan (the "Loan") for her son, Bryce Middlebrook, and guaranteed the debt in the amount of $21,000 plus accrued interest. ("Mot.," Dkt. # 14, Ex. A ¶ 7.) In late 2013, she received notice from Defendants that the Loan was in default. (Id. ¶ 8.) On November 29, 2013, Plaintiff made arrangements to pay Sallie Mae $14,003 to satisfy the obligations outstanding on the Loan. (Id.)

Plaintiff alleges that, thereafter, Defendants continued to demand additional payment on separately cosigned loans, which Plaintiff's counsel clarified at the hearing were in excess of $100,000. (Id. ¶ 9.) Plaintiff alleges that she immediately contacted Defendants to dispute that she had ever cosigned the additional loans, but has been unable to obtain written confirmation of the monies allegedly owed. (Id.)

On February 23, 2015, Plaintiff filed a petition in the Bexar County Court, alleging claims under the Deceptive Trade Practices Act ("DTPA") against Defendants. (Id.) The petition indicates that she seeks damages over $100,000 but

less than $200,000, additional damages because the conduct was knowing and intentional, and attorney's fees.  (Id. ¶¶ 16–18.)

On April 17, 2015, Plaintiff filed the instant Motion to Remand.[1] (Mot.)  On April 24, 2015, Sallie Mae and Navient Solutions, Inc. filed their Response (Dkt. # 19), and on April 28, 2015, National Enterprise Systems, Inc. filed its Response (Dkt. # 21).

## LEGAL STANDARD

"It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation."  Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996).  Accordingly, a defendant may only remove a case over which the district court has original jurisdiction, either because of diversity of citizenship or the existence of a federal

---

[1] Plaintiff filed a First Amended Petition on April 17, 2015 (Dkt. # 16).  Because post-removal amendments do not affect the Court's jurisdiction once jurisdiction has attached, the Court does not address the Amended Petition herein.  See St. Paul v. Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."); Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) ("[O]nce the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction."); see also 14C Charles Alan Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 3725.2 (4th ed. 2015) ("[O]nce a case that was initiated in state court has been removed properly, subsequent events that reduce the amount recoverable—such as the plaintiff's amendment of the complaint—will not defeat the federal court's subject-matter jurisdiction.").

question. Halmekangas v. State Farm Fire & Cas. Co., 603 F.3d 290, 295 (5th Cir. 2010).

On a motion to remand, the removing party bears the burden of establishing that one of these bases of jurisdiction exists. Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 278 (5th Cir. 2008). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a); Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

To determine whether jurisdiction is present, the court considers the claims in the state court petition as they existed at the time of removal. Louisiana v. Am. Nat'l Prop. Cas. Co., 746 F.3d 633, 637 (5th Cir. 2014) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)). Because removal jurisdiction implicates federalism concerns, "[a]ny doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." African Methodist Episcopal Church v. Lucien, 756 F.3d 788, 793 (5th Cir. 2014) (internal quotation marks omitted) (quoting Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000)); Frank v. Bear Stearns & Co., 128 F.3d 919, 922 (5th Cir. 1997).

DISCUSSION

Plaintiff argues that remand is appropriate because the amount in controversy is, at most, $9,000, which is insufficient to meet the $75,000 amount in controversy requirement. (Mot. at 2.) Specifically, Plaintiff contends that because the petition is ambiguous as to the damages requested and Plaintiff provided pre-suit notice of the prospective damages to Defendants, Defendants cannot meet their burden of showing that the amount in controversy exceeds $75,000 by a preponderance of the evidence. (Id. at 3.)

I.     Determining the Amount of Damages

"While it is well settled that the removing party bears the burden of establishing facts necessary to show that federal jurisdiction exists, we have applied different standards of proof depending upon whether the complaint alleges a dollar amount of damages." Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

When a complaint alleges a specific amount of damages, courts follow the legal certainty test: the court presumes that the plaintiff's claim for damages is correct unless the party contesting jurisdiction can demonstrate that the amount was pled in bad faith. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938); St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir.

1998).  To show a claim was pled in bad faith, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  Horton, 367 U.S. at 353 (internal quotation marks omitted) (quoting St. Paul Mercury, 303 U.S. at 289).

> Plaintiff's legal certainty obligation might be met in various ways; we can only speculate, without intimating how we might rule in such a case.  Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of a statute . . . .  Absent such a statute, litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul makes later filings irrelevant.

De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (internal quotation marks omitted).

When a complaint alleges an indeterminate amount of damages, the removing party carries the burden of showing that, by a preponderance of the evidence, the amount in controversy exceeds $75,000.  Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000).  The defendant can do so in one of two ways: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"  Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999) (internal quotation marks omitted) (quoting Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999)).  Courts are only to consider summary

6

judgment proof if the face of the complaint does not resolve the question.  Allen, 63 F.3d at 1336 n.16.

> [O]nce the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the "typical" circumstances in which the St. Paul Mercury "legal certainty" test is applicable: The defendant has established, by a preponderance, that federal jurisdiction is warranted.  At this point, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

De Aguilar, 47 F.3d at 1412 (editing marks omitted) (quoting St. Paul Mercury, 303 U.S. at 289).

II.    Damages Pled

In accordance with the 2013 amendments to the Texas Rules of Civil Procedure, Plaintiff's complaint alleges damages over $100,000 but under $200,000.  (Dkt. # 1-2 at 6.)  Plaintiff contends that this is an indeterminate amount of damages, and that Defendant bears the burden of demonstrating that the amount in controversy exceeds $75,000 by a preponderance of the evidence.  (Mot. at 3.)  Defendants argue that they have met the burden because it is facially apparent from Plaintiff's complaint that she alleges damages over $75,000 and she cannot demonstrate to a legal certainty that she will not recover damages in excess of $9,000.  (Dkt. # 19 at 2–6.)

Assuming the parties are correct in asserting that Plaintiff has failed to allege a specific amount of damages in her complaint,[2] the Court finds that Defendant has met its burden in demonstrating that, by a preponderance of the evidence, Plaintiff asserts claims in excess of $75,000.  As is apparent from the face of Plaintiff's complaint, she asserts damages in some amount between $100,000 and $200,000, which clearly exceeds $75,000.  See, e.g., Arriaga v. Midland Funding LLC, No. 3:14-CV-4044-M, 2015 WL 567264, at *3 (N.D. Tex. Feb. 11, 2015) (finding that defendants showed that it was facially apparent from the complaint that the plaintiff sought damages in excess of $75,000 where the plaintiff alleged damages over $100,000 but less than $200,000); TFHSP LLC Series 605 v. Lakeview Loan Servicing, LLC, No. 3:14-CV-1782-B, 2014 WL 5786949, at *4 (N.D. Tex. Nov. 3, 2014) ("Had Plaintiff clearly selected a form of relief enumerated in Texas Rule of Civil Procedure 47(c) that exceeds $75,000 it

---

[2] Historically, courts have found that complaints pled in accordance with Texas Rule of Civil Procedure 47 allege indeterminate amounts of damages because the pre-2013 version of Rule 47 prohibited plaintiffs from specifying a specific amount of damages.  Tex. R. Civ. P. 47(b) (1990) ("[I]n all claims for unliquidated damages [the complaint shall contain] only the statement that the damages sought are within the jurisdictional limits of the court"); Allen, 63 F.3d at 1335 ("This situation [that the plaintiff fails to specify the amount in controversy is] not unusual in this circuit, as both Texas and Louisiana state civil procedure disallows damage claims for specific amounts.").  However, Rule 47 was amended in 2013, and now requires plaintiffs to state that they seek damages within one of the ranges set forth therein.  Tex. R. Civ. P. 47(c).  Accordingly, the rule that complaints pled in accordance with Texas state law should automatically be analyzed under the standard for complaints alleging indeterminate amounts of damages is no longer applicable.

would have been facially apparent that the damages requested satisfy the jurisdictional requirement. For example, if Plaintiff had designated the option listed under Rule 47(c)(3), which calls for 'monetary relief over $100,000 but not more than $200,000,' the Court would have been able to conclude that the amount in controversy exceeds the $75,000 requirement, assuming Plaintiff stated its request for damages in good faith.").

Accordingly, the Court retains jurisdiction over Plaintiff's complaint unless the claim for damages was made in bad faith—in other words, if it appears to a legal certainty that the claim is really for less than the jurisdictional amount.[3] Plaintiff contends that the claim is really for less than the jurisdictional amount, arguing that (1) Plaintiff only selected the $100,000 to $200,000 damage range so that she would not be limited to "the stringent restrictions of discovery in the lower tiers" and so that the case would not be placed on an expedited docket; (2) prior to filing suit, Plaintiff provided a pre-suit notice alleging damages in the amount of $3,000; and (3) at best, Plaintiff could only be awarded a maximum of $9,000 (three times the economic damages incurred). (Mot. at 2.)

---

[3] Because the question turns back to whether the complaint meets the legal certainty test, the result would be the same if the Court had not assumed that the damages were indeterminate, and instead had considered the range of $100,000 to $200,000 as a specific damage amount and analyzed the complaint under that framework. See De Aguilar, 47 F.3d at 1412.

Under Texas Rule of Civil Procedure 169, plaintiffs who plead $100,000 or less in damages are subject to expedited actions process, unless a party to the suit can demonstrate that there is good cause to remove the case from the expedited actions process. The expedited actions process creates an expedited trial schedule, as well as time limits on trial. Tex. R. Civ. P. 169(d). The parties are also subject to the most limited discovery control plan, unless the parties agree to or the court orders a higher level discovery control plan. Tex. R. Civ. P. 190.2(2).

Although Plaintiff's argument about the rationale underlying her damages pleading may or may not be relevant to "bad faith" in the general sense of the word, it is irrelevant to the "bad faith" definition under St. Paul Mercury. Under St. Paul Mercury, the relevant inquiry in determining whether a plaintiff pled damages in bad faith is whether the plaintiff can show that she could not, at the time of filing, recover in excess of $75,000.

The facts, as pled in the complaint, do not indicate how much additional payment Defendants continued to demand from Plaintiff after she paid off the $14,003[4] or whether she paid that amount, nor does the Plaintiff specify how much she seeks in mental anguish damages. Because Plaintiff has alleged that Defendant violated the DTPA knowingly and intentionally, she is entitled to up to three times the economic and mental anguish damages. See Tex. Bus. & Com.

---

[4] The Court does note that Plaintiff's counsel verbally relayed this information to the Court at the hearing.

Code § 17.50(b)(1) (permitting up to three times the economic damages and mental anguish when the conduct was committed knowingly and intentionally). Additionally, in circumstances like the one here, where the statute expressly includes attorney's fees in the allowable expenses, Tex. Bus. & Com. Code § 17.50(d), attorney's fees are includable in the court's calculation of the amount in controversy. Grant v. Chevron Phillips Chem. Co., 309 F.3d 864, 874 (5th Cir. 2002).

Instead, in support of her legal certainty argument, Plaintiff presents a pre-litigation demand letter indicating that her actual economic loss was $3,000. (Mot., Ex. B.)  Although the Fifth Circuit has not addressed whether pre-litigation demand letters can be used to evaluate the amount in controversy at the time of removal, the Fifth Circuit has accepted such evidence as the type of summary judgment proof that a defendant can present to show that the amount in controversy exceeds $75,000.  See, e.g., Hartford Ins. Grp. v. Lou-Con Inc., 293 F.3d 908, 910, 912 (5th Cir. 2002) (per curiam) (affirming the district court's finding that the damages specified in the demand letter demonstrated that the amount in controversy was insufficient to give rise to federal jurisdiction).  Such evidence would be reflective of the damages sought at the inception of litigation— and in this case, at the time of removal.  Accordingly, in light of the Fifth Circuit's pronouncement in De Aguilar that its suggestions for proof of legal certainty were

11

nonexclusive, the Court finds that a pre-litigation demand letter is an acceptable way for a plaintiff to meet her "legal certainty obligation."  See De Aguilar, 47 F.3d at 1412.

Here, the only relevant claim in the pre-litigation demand letter is the claim for actual economic damages in the amount of $3,000.  The claim for attorney's fees therein is irrelevant; that figure will change as the litigation progresses.  As Plaintiff contends, her economic damage award—in light of the knowing and intentional violation alleged in her complaint—could not exceed three times her actual economic damages, or $9,000.  However, she is also eligible for up to three times her mental anguish damages, as well as attorney's fees. Without any information as to the amount of these claims, the Court cannot find, as a legal certainty, that Plaintiff could not recover in excess of $75,000 at the time of filing the complaint.  Given the strong presumption that the damages claimed by the Plaintiff are correct, see St. Paul Mercury, 303 U.S. at 290, the Court must accept the damages that are facially apparent from Plaintiff's complaint.  These damages are clearly in excess of $75,000.  Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand (Dkt. # 14) and **DENIES WITHOUT PREJUDICE AS MOOT** Defendants' Motion to Dismiss (Dkt. # 5).

**IT IS SO ORDERED**.

**DATED**: San Antonio, Texas, May 20, 2015.

_____
David Alan Ezra
Senior United States Distict Judge